**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

BRANCH BANKING & TRUST COMPANY,
    *Plaintiff*,

v.                                                Case No.: 3:10cv055

CARL J. WITMEYER, II,
    *Defendant*.

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COMES NOW Carl J. Witmeyer, II ("Witmeyer"), by counsel, and for his Memorandum in Support of his Motion for Summary Judgment in the captioned case states as follows:

### Introduction

This case involves Branch Banking and Trust Company's ("BB&T") attempt to force Witmeyer to pay for BB&T's mistakes. While certain facts in this case may be subject to argument, the case can be resolved in its entirety in Witmeyer's favor based on facts that BB&T does not dispute.

### Statement of Undisputed Material Facts

On June 4, 2009, Rebekah Williamson ("Ms. Williamson"), acting as Witmeyer's bookkeeper, made a deposit to Witmeyer's IOLTA Trust Account at BB&T. That deposit included a purported Citibank "Official Check" dated June 1, 2009 in the amount of $362,400.20 (the "Check"). See BB&T's Memorandum in Support of Motion for Summary Judgment ("BB&T SJ Memo") at 3-4.

On June 4, 2009, Ms. Williamson telephoned BB&T teller Lisa Thrift to inquire when the funds represented by the Check would be available to be wired. BB&T SJ Memo at 6. Later that day, after being told by Ms. Williamson that funds were available for purposes of

accomplishing a wire transfer, Witmeyer went to BB&T, where he met with BB&T employee Brenda Street.  Witmeyer then said to Ms. Street, "I understand from Becky [Williamson], my bookkeeper, that the Check had cleared and the funds were available to be transferred.  And she said, let me check and I was across the desk from her, so I don't know what she did, but she said, that's true."  Witmeyer Deposition (attached to Witmeyer's Memorandum in Opposition to BB&T's Motion for Summary Judgment ("Witmeyer Opposition Memo") as Exhibit G) at 34, lines 19-23.

In the absence of BB&T's misrepresentation of the status of the Check on June 4, Witmeyer would not have authorized BB&T to wire $223,200.00 from his IOLTA account.  See Affidavit of Carl J. Witmeyer, II (attached to Witmeyer Opposition Memo as Exhibit H) at paragraph 9.  Likewise, BB&T would not have completed the wire transaction if the Check had not been deposited to Witmeyer's account.  BB&T's Objections and Supplemental Responses to Defendant's First Requests for Admissions ("BB&T Admissions") (attached to Witmeyer Opposition Memo as Exhibit D), Response to Admission Nos. 4 and 5.

Witmeyer was in no hurry to effect the wire transfer and had no need to do so prior to the Check being paid.  See Witmeyer Affidavit, paragraph 17.  If he had not been told the Check had cleared, he would not have authorized BB&T to make the wire transfer from his IOLTA account. Id., paragraph 9.

Based on BB&T's representations, however, Witmeyer did authorize the wire transfer of $223,200.00 to an account in Tokyo, Japan.  Witmeyer Affidavit at 9, 17; BB&T SJ Motion at 6. On June 8, 2009, BB&T seized $63,085.05 from Witmeyer's IOLTA trust account.  BB&T Complaint, paragraph 18.

**Argument**

I. **BB&T Is Liable to Witmeyer for Constructive Fraud and its Misrepresentation Estops BB&T From Recovering from Witmeyer.**

The elements necessary to establish the equitable defense of estoppel, "'absent a showing of fraud and deception, are a representation, reliance, a change of position, and detriment.'" Waynesboro Village, LLC v. BMC Properties, 255 Va. 75, 91, 496 S.E.2d 64, 68 (1998) (quoting T . . . v. T . . ., 216 Va. 867, 872-73, 224 S.E.2d 148, 152 91976)). These are essentially the same elements necessary to establish an affirmative claim for constructive fraud. See Prospect Dev. Co. v. Bershader, 258 Va. 75, 86, 515 S.E.2d 291, 297 (1999).

The uncontroverted evidence is that BB&T employee Brenda Street indicated to Witmeyer that the Check had cleared when in fact it had not. In reliance on that false representation, Witmeyer authorized the transfer of $223,200.00 from his IOLTA Trust Account. Accordingly, when BB&T revoked the "provisional" credit it had given Witmeyer, the funds were no longer in the account and BB&T was unsuccessful in reversing the wire transfer by which those funds were removed from the account.

Although BB&T claims that it cannot be held accountable for its misrepresentations to Witmeyer, Courts considering similar misrepresentations by banks have had no difficulty applying the equitable defense of estoppel or in allowing independent claims for recovery based on such misrepresentations.

In J. P. Morgan Chase Bank, N.A. v. Mal Corp, 2009 U.S. Dist. LEXIS 23540 (N.D. Ill. March 26, 2009), Plaintiff J.P. Morgan Chase Bank, N.A. ("Chase") sued its customer for breach of his endorser obligations and transfer warranties after the customer deposited what turned out to be a counterfeit cashier's check into its account. Although Chase argued that the defense of equitable estoppel had been displaced by the Illinois UCC transfer warranty provisions, the Court

3

found that the customer's allegations that Chase had told it the check had cleared when it had not and that Chase failed to take action to prevent the loss, even though faced with indicia of a check fraud scheme, would give rise to an affirmative defense of estoppel. Id. at *16-17. In so ruling, the Court rejected Chase's argument that the defense of equitable estoppel had been displaced by the UCC transfer warranties. Id. at *17.

Likewise, in First Nat'l Bank of Denver v. Ulibarri, 38 Colo. App. 428, 557 P.2d 1221 (Colo. App. 1976), Plaintiff bank sued to recover on a check made payable to Defendant Ulibarri, who had deposited the check, written by his customer, into his account with the bank. Defendant, after being told by the bank that the check had been paid, released a diamond to the customer who had given him the check in payment. The bank's representation was false and caused the Defendant to lose his merchandise, because the check was fraudulently drawn on a bank where the customer had no account. The Court, relying on section 1-103 of Colorado's UCC, held that although by depositing the check for collection, the Defendant was liable for breach of his transfer warranties, the bank's claim was subject to the equitable defense of estoppel, which barred the bank's recovery. Id at 1223.

The Court in First Georgia Bank v. Webster, 168 Ga. App. 307, 308 S.E.2d 579 (1983) also recognized an estoppel defense to a bank's claims based on UCC transfer warranties and endorser's liability where a customer wrote checks in reliance on a bank employee's false representation that a check deposited in his account was "good".

In Valley Bank of Ronan v. Hughes, 334 Mont. 335, 147 P.3d 185 (2006) bank personnel had assured the bank's customer that certain "official" checks he deposited were "the same as cash" and "would be good." Id. at 338, 147 P.3d at 188. In reliance on those representations, the customer wired money from his account and thereby became the victim of a so-called "Nigerian"

4

check scam. Id. The court held that the trial court "erred by concluding that the UCC preempted common law and equitable principles with respect to the alleged misrepresentations." Id. at 344, 147 P.3d at 192.

In Holcomb v. Wells Fargo Bank, N.A., 155 Cal. App. 4th 490, 66 Cal. Rptr. 3d 142 (2007), a bank's customer was originally told by a Wells Fargo teller that a "hold" would be placed on checks he deposited until Wells Fargo could "verify the funds" with the bank on which the checks were drawn. Id. at 493, 66 Cal. Rptr. 3d at 145. The customer later received a phone call from the teller, who informed him "that the funds had been verified and that he could begin using the funds deposited." Id. This information was false, as the checks were eventually returned for insufficient funds. Id. While affirming the bank's UCC right of chargeback, the Court held, "There is nothing in the [UCC] prohibiting a claim based on a depositor's detrimental reliance on a bank employee's incorrect statements". Id. at 498, 66 Cal. Rptr. 3d at 148.

All of these cases recognize the common-sense notion that a bank must be responsible for the accuracy of information it provides to its customer. In the present case, BB&T indicated to Witmeyer that the Check had cleared[1] when in fact it had not. Witmeyer relied on that representation and wired over $200,000.00 in funds to Japan based on BB&T's representation. If it had not been for BB&T's misrepresentation, the funds would not have been wired and would have been in Witmeyer's IOLTA account on June 8, 2009 when BB&T reversed the "provisional" credit it had granted Witmeyer.

Accordingly, BB&T is estopped from asserting its present clams against Witmeyer and Witmeyer is entitled to judgment against BB&T for the funds BB&T seized from Witmeyer's

---

[1] "If the term 'cleared' means anything in common banking usage, it is that final settlement has occurred." Valley Bank of Ronan, 334 Mont. at 345 n.6, 147 P.3d at 193 n.6.

IOLTA trust account and additional amounts for which Witmeyer might otherwise be liable to BB&T on its claims against him.

## II. <u>Witmeyer is Entitled to Judgment Against BB&T on His Claim for Breach of Fiduciary Duty and Conversion</u>.

Counts IV and V of Witmeyer's counterclaim are for breach of fiduciary duty and conversion. Because the Account at issue was an IOLTA trust account, BB&T owed a fiduciary duty to Witmeyer's customers and breached that duty by converting their funds to provide itself with a partial repayment of the amount of the wire transfer.

It is true that the UCC does not create a fiduciary relationship between a bank and its customer. Where, however, a bank knows that an account is an escrow account, the usual debtor-creditor relationship between the bank and its depositer does not arise. See <u>Jones v. Sovran Bank, N.A. (In re: Nat Warren Contracting, Inc.</u>), 905 F.2d 716, 718 (4th Cir. 1990) (where funds are deposited into a "special account" the deposit does not become the property of the bank) (citing <u>Bernardini v. Central Nat'l Bank</u>, 223 Va. 519, 521, 290 S.E.2d 863, 864 (1982) ("where funds are deposited for a special purpose with notice to the bank, the deposit does not become the property of the bank")).

"A special deposit is sometimes said to be the equivalent to a bailment." <u>First Nat'l Bank v. Commercial Bank & Trust Co.</u>, 163 Va. 162, 171, 175 S.E. 775, 778 (1934). Thus, "[a] bank accepting such a deposit is chargeable with the responsibility, civil or criminal, <u>like any other trustee</u>, if it uses for itself what was to be held in trust for someone else." <u>Id</u>. at 172, 175 S.E. at 778 (emphasis added). Accordingly, by accepting deposits into Witmeyer's IOLTA trust account, the bank accepted a fiduciary duty to Witmeyer's clients, who were the beneficial owners of the account's contents. Given that relationship, BB&T breached a fiduciary duty to

6

Witmeyer's clients when it took their funds to satisfy what BB&T has characterized as a personal debt of Witmeyer based on alleged endorsement and transfer warranty liabilities.  See Jones v. United States Fidelity & Guaranty Co., 165 Va. 349, 355-56, 182 S.E. 560, 562 (1935) (where funds in account were fiduciary funds and bank knew this, it 'had no right to accept them in satisfaction of its personal claim against" its depositer).

Witmeyer, as the attorney for the clients whose funds BB&T converted, has standing to bring such claims on their behalf.  See Radin v. Crestar Bank, 249 Va. 440, 442, 457 S.E.2d 65, 66 (1995); Weichert Co. v. First Commercial Bank, 246 Va. 108, 109, 431 S.E.2d 308, 309 (1993).  Accordingly, BB&T is liable to Witmeyer for breach of fiduciary duty and conversion.

## Conclusion

BB&T cannot dispute that its employee represented to Witmeyer that the Check had cleared when it had not.  It cannot dispute that in reliance on that false representation, Witmeyer took action that resulted in $223,200.00 of the funds represented by the Check not being in his IOLTA Trust Account when BB&T decided to remove the "provisional" credit it had granted him.  Likewise, BB&T cannot dispute it knew the funds it seized were in an IOLTA trust account and that therefore it was taking money held in trust for Witmeyer's clients to satisfy claims it was asserting solely against Witmeyer.

Bankers, however much BB&T may argue otherwise, are not above the law and are held to the same standards of accountability as individuals and other corporate entities.  Witmeyer is entitled to judgment as a matter of law as set forth above and as detailed in Witmeyer's Memorandum in Opposition to BB&T's Motion for Summary Judgment.

CARL J. WITMEYER, II

By: _____/s/_____
        Of counsel

David D. Hopper, Esquire
Virginia State Bar number: 30038
Attorney for Carl J. Witmeyer, II
Cook, Heyward, Lee, Hopper & Feehan, P.C.
4551 Cox Road, Suite 210
P.O. Box 3059
Glen Allen, Virginia 23058-3059
Telephone: (804) 747-4500
Facsimile: (804) 762-9608
ddhopper@chlhf.com

## **CERTIFICATE**

I hereby certify that on this 9th day of November, 2010, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Daniel S. Fiore, Esquire
531 Lee Highway
Arlington, Virginia 22207
daniel.fiore@fiorelevine.com

*Counsel for Branch Banking & Trust Company*

_____/s/_____
David D. Hopper, Esquire
Virginia State Bar number: 30038
Attorney for Carl J. Witmeyer, II
Cook, Heyward, Lee, Hopper & Feehan, P.C.
4551 Cox Road, Suite 210
P.O. Box 3059
Glen Allen, Virginia 23058-3059
Telephone: (804) 747-4500
Facsimile: (804) 762-9608
ddhopper@chlhf.com